IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Davis,<br><br>    Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>    Respondents. | No. CV-19-04370-PHX-DWL<br><br>**ORDER** |

On June 4, 2019, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("the Petition"). (Doc. 1.) While the Petition was pending, Petitioner also filed a motion for leave to amend the Petition ("Motion to Amend") (Doc. 11) and a motion for leave to expand the record ("Motion to Expand") (Doc. 15.) On March 20, 2020, Magistrate Judge Morrissey issued a Report and Recommendation ("R&R") concluding that the Motion to Amend should be granted, the Motion to Expand should be denied, and the Petition (as amended) should be denied and dismissed with prejudice. (Doc. 19.) Afterward, Petitioner filed objections to the R&R (Doc. 29) and Respondents filed a response (Doc. 31). Additionally, Petitioner filed a motion for a certificate of appealability ("COA"). (Doc. 27.)

For the following reasons, the Court will overrule Petitioner's objections to the R&R, grant the Motion to Amend, deny the Motion to Expand, deny the Petition (as amended), deny a COA, and terminate this action.

…

I.     Background

*Underlying Facts.* In January 2015, Petitioner's fifteen-year-old step-daughter gave birth to a child. (Doc. 19 at 2.) Hospital workers called the police after the step-daughter disclosed that Petitioner was the child's father. (*Id.*) Petitioner separately called 911 in an attempt to "turn himself in" for "statutory rape." (*Id.*)

During a post-arrest interview, Petitioner "admitted that he engaged in nonconsensual sexual intercourse with [his step-daughter] between five and ten times since December 2013. He advised officers that he used his position as an authority figure in the home to force [his step-daughter] to have sex with him and that [his step-daughter] has a diminished mental ability, and functions at the mental capacity of an eleven year old." (*Id.*)

Similarly, during a forensic interview, the step-daughter reported that Petitioner "had been having sex with her since she was approximately thirteen years old," that Petitioner "would verbally threaten her not to tell her mother that it was happening, or her mother would be taken to jail, and she would be separated from her family," and that "she tried to stop [Petitioner] on more than one occasion but felt scared . . . [because Petitioner] would hit her if she resisted." (*Id.*)

*Trial Court Proceedings.* In June 2015, Petitioner's court-appointed counsel sent an email to the prosecutor in an attempt to obtain a favorable plea offer. (Doc. 10-2 at 134.) The email stated in part that "[w]e have been waiting on [Petitioner's] medical records from his years in the [M]arines," that "I wanted to be able to verify [Petitioner's] mental status and PTSD issues before formally submitting that information in a deviation [request]," and that "I know [Petitioner] would like to settle this case, but his mental and physical condition are deteriorating." (*Id.*) The email further stated that defense counsel hoped to obtain "a deviation in the range of 20-27 [years] or a stip[ulation] within that range." (*Id.*)

In October 2015, Petitioner participated in a settlement conference. (Doc. 19 at 10.) In advance of the conference, Petitioner's counsel submitted a mitigation memo on Petitioner's behalf. (Doc. 10-2 at 136-37.) The memo stated that Petitioner had earned

"multiple good conduct awards and combat service ribbons" while in the Marines but was not allowed to re-enlist in 2005 "due to weakening heart and beginning signs of PTSD." (*Id.* at 136.) The memo further stated that Petitioner's "in-home VA caregiver assessments and physicals diagnose him with poor cognitive ability, poor memory and confusion, almost deaf in one ear (mortar firings), isolated and withdrawn." (*Id.* at 137.) Finally, the memo emphasized that Petitioner "appreciates the wrongfulness of his actions and damage he has wrought to his family" and "asks for leniency from the state in the form of a deviation given the provided mitigation and importantly, from his genuine shame and desire for accountability for his actions." (*Id.*)

During the settlement conference, Petitioner "listened to the court and counsel, told the court he was 'still thinking about the time' he would have to serve under the [proposed plea] agreement, and asked the court for time to talk with his attorney about the plea offer." (Doc. 19 at 10, citations omitted.)

Soon after the settlement conference, Petitioner agreed to accept the plea offer. During the change-of-plea hearing, which occurred before Judge Coury, Petitioner "repeatedly assured the court that he understood the court's comments and instructions." (*Id.* at 8.) Petitioner also "responded to the questions posed," "gave detailed answers," and "correctly provided his biographical information, but informed the court he had taken several medications to treat various health problems." (*Id. See also id.* at 10 n.1.) "At that point, the court asked follow-up questions regarding [Petitioner's] understanding and mental state, and [Petitioner] stated that he understood the proceedings and avowed that the medications did not affect his judgment or reasoning." (*Id.* at 8.) Additionally, Petitioner "told the court that he voluntarily accepted the plea and waived his rights." (*Id.*)

The sentencing hearing took place in November 2015 before Judge Fenzel. (*Id.* at 11, 13.) During the hearing, Petitioner read the following statement:

> People make mistakes. Seldomly, they own up to them and hold themselves accountable. I initiated atonement for myself starting with an apology to the victim. I encouraged her to report. I yielded superior authority by reporting my crime to the police. I confessed my crime on record to the police, with the hopes to alleviate any burden of guilt and shame. I put it all on me. I've

> never pointed the blame at anyone or ever encouraged anyone else for my actions. My display of courage, integrity and accountability reflects my true medal that will forever be questioned and overshadowed by my criminal actions. I'm usually not at a loss for words or weak, but actually hearing in hi-fi the suffering, it's real and incredibly close to me. So it's the worst thing. And 27 years flat is appropriate.

(*Id.* at 11.) The trial court accepted the plea agreement and sentenced Petitioner to the stipulated term of 27 years' imprisonment.

*PCR Proceedings.*  In December 2015, Petitioner filed a notice of post-conviction relief ("PCR"). (*Id.* at 2.) Petitioner's court-appointed counsel subsequently filed a notice advising that counsel could not identify any colorable issues. (*Id.* at 2-3.)

In February 2017, Petitioner filed a *pro se* PCR petition. (*Id.* at 3.) It raised two claims of ineffective assistance of counsel ("IAC"): (1) Petitioner's trial counsel failed to seek a competency determination, and (2) Petitioner's trial counsel failed to pursue an insanity defense. (*Id.*)

In April 2017, the trial court denied the petition. (*Id.* at 3.) It ruled that Petitioner was "clearly competent" when he pleaded guilty and emphasized that having PTSD (or another mental illness) "does not mean that a Defendant is incompetent to plead guilty. The issue regarding competency is whether or not the Defendant was able to understand the nature of the charges he faced and to assist his [counsel] in his defense." (*Id.*) Additionally, the court noted that "a Defendant waives non-jurisdictional defenses when a plea is entered" and "[a]n insanity defense . . . [is] non-jurisdictional." (Doc. 10-3 at 26.)

In May 2017, Petitioner filed a motion for reconsideration. (Doc. 10-3 at 29-32.) In it, Petitioner argued for the first time that the judge overseeing his change-of-plea hearing had coerced him into pleading guilty by engaging in questioning that was "leading, suggestive, and more of a directive compared to an interrogative" and by focusing on Petitioner's Marine service. (*Id.* at 31.) This motion was denied without explanation. (*Id.* at 35.)

*Appeal of PCR Proceedings.*  In June 2017, Petitioner filed a petition for review with the Arizona Court of Appeals. (Doc. 10-3 at 37-46.)

- 4 -

The Court of Appeals accepted review but denied relief. (Doc. 10-3 at 71-74.) As for Petitioner's claim that he was coerced into pleading guilty by the judge overseeing his change-of-plea hearing, the court held this claim was forfeited because Petitioner hadn't properly presented it in his PCR petition. (Doc. 10-3 at 73 ¶ 5.) As for Petitioner's competency-based IAC claim, the court held that "the record supports the superior court's finding that [Petitioner] was competent to waive his rights and enter the plea" in light of fact that Petitioner "appropriately responded to the questions posed" during the change-of-plea hearing and also provided "repeated assurances" of his understanding and mental state. (Doc. 19 at 8.) Finally, as for Petitioner's insanity-based IAC claim, the court held that Petitioner could not establish prejudice because "the evidence showed that [Petitioner] threatened and hit the Victim to keep her from telling her mother of the sexual assaults. No evidence was presented that [Petitioner] did not know what he was doing was wrong." (*Id.* at 11-12.)

*The Petition*. In June 2019, Petitioner filed the Petition. (Doc. 1.) It alleges IAC by trial counsel in failing to seek a competency evaluation and in failing to pursue an insanity defense. (Doc. 19 at 3.)

*The Motion To Amend*. In September 2019, Petitioner filed the Motion to Amend. (Doc. 11.) It seeks permission to add a new claim—that the trial court "may not [have] had jurisdiction to convict Petitioner" because the judge overseeing the change-of-plea hearing, Judge Coury, "was not sworn into his oath of office" at the time of the hearing. (*Id.* at 1.) In support of the motion, Petitioner filed a copy of an oath-of-office form executed by Judge Coury, which is on file with the Arizona Secretary of State. (Doc. 11 at 5-6.) The form reflects that it was signed by Judge Coury in November 2016 and filed with the Secretary of State in December 2016. (*Id.*)

*The Motion To Expand*. Later in September 2019, Petitioner filed the Motion to Expand. (Doc. 15.) It seeks to add to the record certain police reports from the Avondale Police Department. (*Id.* at 1.) According to Petitioner, these reports will contradict the allegation that he "admitted to using his power of authority to abuse the victim" because

they will reveal that he merely "said, 'With me having power over her, it can't be consensual.'" (*Id.*) Petitioner further argues that the reports will be useful in impeaching the victim. (*Id.*)

*The R&R*. The R&R was issued in March 2020. (Doc. 19.) As for Petitioner's competency-based IAC claim, the R&R concludes the claim should be denied because "Petitioner's statements during his settlement conference, change of plea, and sentencing do not demonstrate he was incompetent to plead guilty," and thus "Petitioner fails to demonstrate that the decision of the Arizona Court of Appeals was clearly unreasonable." (*Id.* at 11-12.)

As for Petitioner's insanity-based IAC claim, the R&R rejects, as a threshold matter, Respondents' contention that the claim isn't cognizable on habeas review. (*Id.* at 12.) Nevertheless, on the merits, the R&R concludes that Petitioner "fails to establish that the Arizona Court of Appeals was unreasonable when it found that Petitioner did not prove prejudice" in light of (a) Petitioner's numerous statements (to the police during the 911 call, during the post-arrest interview, during the change-of-plea hearing, and during sentencing) expressing contrition and consciousness of guilt, and (b) the victim's statement that Petitioner made threats in an effort to conceal his misconduct. (*Id.* at 12-13.)

As for the Motion to Amend, the R&R recommends that it be granted, but that relief based on the new claim be denied, because (1) even if Petitioner had demonstrated a problem with Judge Coury's oath, this would present a pure state-law question not cognizable on habeas review, (2) given Petitioner's failure to challenge the qualifications or oath of the judge who sentenced him (Judge Fenzel), "Petitioner also fails to show the alleged failure to follow state procedures resulted in the deprivation of a substantive right," and (3) "this claim is procedurally defaulted without excuse because Petitioner did not raise this claim in state proceedings" and the oath-of-office card was available months before Petitioner filed his PCR petition. (*Id.* at 13-15.)

Finally, as for the Motion to Expand, the R&R recommends that it be denied because (1) although Petitioner views as exculpatory his admission that he merely possessed

- 6 -

"power over" the victim, this admission actually "corroborate[s] that he knew his conduct was improper," and (2) similarly, even if the police reports had some impeachment value as to the victim, there remains "ample evidence of consciousness of guilt from Petitioner's conduct." (*Id.* at 15.)

II.     Legal Standard

A party may file written objections to an R&R within fourteen days of being served with a copy of it. Rules Governing Section 2254 Cases 8(b) ("Section 2254 Rules"). Those objections must be "specific." *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file *specific* written objections to the proposed findings and recommendations.") (emphasis added).

District courts are not required to review any portion of an R&R to which no specific objection has been made. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."). Thus, district judges need not review an objection to an R&R that is general and non-specific. *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as would a failure to object.'") (citations omitted); *Haley v. Stewart*, 2006 WL 1980649, *2 (D. Ariz. 2006) ("[G]eneral objections to an R & R are tantamount to no objection at all.").[1]

…

…

…

---

[1]     *See generally* S. Gensler, 2 Federal Rules of Civil Procedure, Rules and Commentary, Rule 72, at 422 (2018) ("A party who wishes to object to a magistrate judge's ruling must make specific and direct objections. General objections that do not direct the district court to the issues in controversy are not sufficient. . . . [T]he objecting party must specifically identify each issue for which he seeks district court review . . . .").

III.   Analysis

Petitioner has filed written objections to the R&R. (Doc. 29.) Those objections can be grouped into four categories. First, as for the competency-based IAC claim, Petitioner argues that (1) the R&R's conclusion that his statements during the settlement conference, change-of-plea hearing, and sentencing hearing were suggestive of competence is based on an "abstract review of the transcripts," (2) the R&R "overlook[s] the fact that . . . the [trial judge] hounded him about his hesitancy about signing the plea" and engaged in other forms of "coercive behavior," (3) the June 2015 email from his counsel to the prosecutor, as well as the October 2015 mitigation memo, demonstrate that his counsel had concerns about his mental condition, and such concerns should have prompted his counsel to seek a competency evaluation instead of "mov[ing] forward with plea negotiations," (4) the judge overseeing the settlement conference stated that the mitigation memo was "extremely persuasive," and this statement functions as a concession that there were reasonable grounds to believe a competency hearing was necessary, and (5) Petitioner's PTSD- and hypertension-related medical records further show why the court should have held a competency hearing. (*Id.* at 1-5.) Petitioner concludes: "Even if the Court finds . . . that there were no issues regarding Petitioner's competency, then the fact remains the guilty plea was the result of judicial participation in the plea negotiations in order to contrive a conviction . . . ." (*Id.* at 5.)

These objections will be overruled. Before addressing each objection individually, it is necessary to emphasize an overarching point. The transcripts from Petitioner's settlement conference, change-of-plea hearing, and sentencing hearing speak for themselves. Petitioner displayed lucidity, answered questions coherently, provided assurances concerning his competency, and spoke in depth about his contrition. On this record, Petitioner has not come close to showing that the Arizona Court of Appeals' rejection of his competency-based IAC claim was a violation of clearly established federal law or an unreasonable application of clearly established federal law.

With this backdrop in mind, Petitioner's individual objections are easily addressed.

First, Petitioner has not demonstrated that the R&R contains factual misstatements that are the product of an "abstract review" of the record. To the contrary, the R&R accurately summarizes the record. Second, several of Petitioner's arguments are directed not toward the conduct of Petitioner's trial counsel, but toward the conduct of the judge who oversaw the change-of-plea hearing. Those arguments fail because they are distinct from the competency-based IAC claim raised in the Petition (and, as the Arizona Court of Appeals correctly found, Petitioner forfeited any separate claim of judicial coercion by failing to raise it in his PCR petition). Third, although it is true that the materials written by Petitioner's counsel show that counsel was aware of Petitioner's PTSD and other mental issues, and the medical records proffered by Petitioner further corroborate the presence of those issues, the record is replete with evidence suggesting that Petitioner was competent to waive his rights and enter a guilty plea despite those mental issues. At a minimum, Petitioner has not shown that the Arizona Court of Appeals' conclusion to that effect was clearly unreasonable. Finally, Petitioner's contention that the judge overseeing the settlement conference somehow conceded that a competency hearing was necessary, by remarking that the mitigation memo was "extremely persuasive," lacks merit. The mitigation memo didn't raise any concerns regarding Petitioner's competency to enter a guilty plea and indeed sought the judge's assistance in persuading Petitioner that the existing plea offer was a favorable one.

Second, as for the insanity-based IAC claim, Petitioner "respectfully disagrees" with the R&R's determination that an insanity defense was unlikely to succeed on the merits, arguing that (1) the prescription medications he was taking for his PTSD have "serious side-effects that cause[] changes in personality, confusion, and hallucinations" and have even caused some users to "hav[e] sex and later hav[e] no memory of the activity," (2) his VA caregiver reported that he was experiencing "lucid dreams," (3) "[i]t is clear that Petitioner did not take any precautions to disguise his actions," and (4) the R&R's "consciousness of guilt" analysis is marred by a failure to establish that such consciousness was "relative to time and space of the offense." (Doc. 29 at 5-7.)

These objections will be overruled. The crime in this case wasn't a one-time offense—it involved a sustained pattern of sexual abuse of a mentally impaired child, as well as threats of physical force and family disintegration designed to coerce the victim into staying silent. The notion that such conduct could be a side effect of prescription drugs or bad dreams is fanciful. Additionally, Petitioner's contention that he "did not take any precautions to disguise his actions" is belied by the record—as noted, he engaged in various forms of coercion in an effort to evade detection—and the fact he took such precautions while his crimes were ongoing undermines any suggestion that he only began displaying consciousness of guilt after the crimes stopped. The Arizona Court of Appeals did not violate clearly established federal law by concluding, on this record, that Petitioner would be unable to establish prejudice on any IAC claim premised on counsel's failure to pursue an insanity defense.

Third, as for Judge Coury's alleged failure to take the required judicial oath, Petitioner argues (1) this claim is cognizable on habeas review because Article IV of the United States Constitution requires that all judicial officers of the United States be bound by oath, (2) Judge Coury engaged in improper coercion during the change-of-plea hearing, and (3) although the Arizona Court of Appeals determined that Petitioner's judicial coercion claim was forfeited, this Court may review it under *Anders v. California*, 386 U.S. 738 (1967). (Doc. 29 at 7-10.)

These objections lack merit. The R&R identified three independent reasons why Petitioner's no-judicial-oath claim should be rejected: (1) it is a pure state-law claim, and thus not cognizable on habeas review; (2) Petitioner cannot show his substantial rights were violated in light of the fact that a different judge sentenced him and entered judgment; and (3) this claim is procedurally defaulted without excuse because Petitioner failed to raise it during the PCR proceedings. (Doc. 19 at 13-15.) Although Petitioner's objections address the R&R's first reason (and can be liberally construed as addressing the R&R's second reason), Petitioner has not addressed the R&R's third reason. To be clear, the judicial coercion claim that Petitioner belatedly sought to raise during the PCR proceedings (which

the Arizona Court of Appeals rejected as untimely) is different from the no-judicial-oath claim that Petitioner now wishes to pursue. That claim is based on information that was available to Petitioner at the time he filed his PCR petition and *Anders* does not provide this Court with a basis for overlooking AEDPA's exhaustion requirements.

Fourth, Petitioner objects to the R&R's recommendation that his Motion to Expand be denied. (Doc. 29 at 10-11.) Here, Petitioner simply repeats the arguments he raised in the motion, without acknowledging (let alone challenging the validity of) the R&R's rationale for rejecting those arguments. (*Id.*) Accordingly, further review is not required under Rule 72. Additionally, the Court agrees with the R&R's analysis concerning the Motion to Expand and adopts it.

Accordingly, **IT IS ORDERED** that:

(1) Petitioner's objections to the R&R (Doc. 29) are **overruled**.

(2) The R&R (Doc. 19) is **accepted**.

(3) The Motion To Amend (Doc. 11) is **granted**.

(4) The Motion To Expand (Doc. 15) is **denied**.

(5) The Petition (Doc. 1), as amended (Doc. 11), is **denied and dismissed with prejudice**.

(6) A Certificate of Appealability and leave to proceed in forma pauperis on appeal are **denied** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

(7) The motion for a COA (Doc. 27) is **denied**.

(8) The Clerk shall enter judgment accordingly and terminate this action.

Dated this 18th day of May, 2020.

Dominic W. Lanza
United States District Judge